UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


GULFCOAST MEDICAL SUPPLY, INC.,

        Plaintiff.


v.                                    CASE NO:  8:04-cv-2610-T-26EAJ

SECRETARY, United States Department
of Health and Human Services,

        Defendant.
_____/

## O R D E R

Before the Court are Plaintiff's initial brief ("Pl. Br.") (dkt. 18), Defendant's

memorandum in support of its decision (dkt. 20), Plaintiff's reply brief (dkt. 21), and

Defendant's sur-reply brief (dkt. 22).  Also before the Court is the administrative record ("A.R").

(Dkt. 12.)

Plaintiff, Gulfcoast Medical Supply, a supplier of durable medical equipment ("DME"),

including motorized wheelchairs and accessories, seeks judicial review of Defendant's, Secretary

for the United States Department of Health and Human Services, determination of an

overpayment of Medicare reimbursement to Plaintiff.  After an audit, Defendant denied several

of Plaintiff's claims for motorized wheelchairs and accessories that Defendant had already paid

when Plaintiff initially presented the claims.  Defendant then assessed an overpayment of

$295,821.00 against Plaintiff and later subsequently reduced the amount to $280,573.69.  The

basis given for denial of the claims was that Plaintiff did not provide adequate documentation to

demonstrate the medical necessity for the ordered items.  Plaintiff argues that the claims at issue were wrongfully denied because the requisite information, specifically certificates of medical necessity ("CMN") signed by the patients' treating physicians, were furnished to Defendant in support of reimbursement.  Plaintiff sues for mandamus relief under 28 U.S.C. § 1361, violation of the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 702 & 706(2)(A)(C)(D), and for violation of due process.  The Court finds that Defendant's overpayment determination is based upon substantial evidence in the administrative record and, thus, that determination will be affirmed.  Defendant's initial and reply briefs are thorough and well-reasoned.  Consequently, portions are adopted and incorporated in this order.

### STANDARD OF REVIEW

The Medicare Act, 42 U.S.C. § 1395ff(b)(1), provides for judicial review of the Secretary's reimbursement determinations only after the Secretary renders a final decision on the claim, in the same manner as is provided in 42 U.S.C. § 405(g) for claims arising under the Social Security Act.  Judicial review under § 405(g) must be based solely on the administrative record.  See 42 U.S.C. § 405(g) (incorporated by reference in 42 U.S.C. § 1395ff(b)(2)(a)).  On such review, the Secretary's findings of fact are conclusive if supported by substantial evidence. Id.  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and internal quotation marks omitted).[1]

---

[1]   The APA standard of review, 5 U.S.C. §§ 706(2)(A), (E), provides that agency action may be set aside only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "unsupported by substantial evidence in a case . . . reviewed on the record of an agency hearing provided by statute." Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 413-15 (1971). While the Secretary's compliance with the Medicare statute

As the Eleventh Circuit Court of Appeals has held, when "reviewing the Secretary's decisions," courts "must abide by those decisions 'unless [they are] arbitrary, capricious, an abuse of discretion, not in accordance with law, or unsupported by substantial evidence in the record taken as a whole.'" Alacare Home Health Serv., Inc. v. Sullivan, 891 F.2d 850, 854 (11th Cir.1990) (quoting Carraway Methodist Med. Center v. Heckler, 753 F.2d 1006, 1009 (11th Cir.1985)) (alteration in original). "[T]he Secretary has amassed considerable expertise in the health care area and absent a strong showing by the plaintiff, 'this court will not substitute its judgment for that of the agency.'" Id. (quoting Lloyd Noland Hosp. & Clinic v. Heckler. 762 F.2d 1561, 1565 (11th Cir.1985)).

## BACKGROUND

### The Medicare Program

The Medicare Program is administered by Defendant, Secretary of Health and Human Services. The Medicare Act, established under Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395-1395ggg, pays for covered medical care provided to eligible aged and disabled persons. The statute consists of three main parts: Part A, which generally authorizes payment for covered inpatient hospital care and related services, 42 U.S.C. §§ 1395c to 1395i-5, 42 C.F.R. Part 409; Part B, which provides supplementary medical insurance for covered medical services, such as doctors' visits, diagnostic testing, or covered medical supplies, such as DME, prosthetics and orthotics, 42 U.S.C. §§ 1395j to 1395w-4, 42 C.F.R. Part 410; and Part C, which authorizes

---

and regulations is reviewable under the arbitrary and capricious standard, and the adequacy of record support for the final agency decision is reviewable under the substantial evidence standard, "the two standards involve the same level of scrutiny." Memorial Hospital/Adair County Health Center, Inc. v. Bowen, 829 F.2d 111, 117 (D.C. Cir. 1987).

beneficiaries to obtain services through HMOs and other "managed care" arrangements, 42

U.S.C. §§ 1395w-21 to 1395w-28, 42 C.F.R. Part 422.  This case involves Part B, as Plaintiff is a

DME "supplier."  42 C.F.R. § 400.200.

In administering Part B, CMS acts through private fiscal agents called "carriers."  42

U.S.C. § 1395u; 42 C.F.R. Part 421, Subparts A and C, and 42 C.F.R. § 421.5(b).  Carriers are

private entities, generally insurance companies, that, under contract with Defendant, perform a

variety of functions, such as making coverage determinations in accordance with the Medicare

Act, applicable regulations, the Medicare Part B Supplier Manual, the publicly available Program

Integrity Manual ("PIM"), regional Durable Medical Equipment Regional Carriers ("DMERCs,"

"DMER carriers," or "carriers") manual, and other guidance, determining reimbursement rates

and allowable payments, conducting audits of the claims submitted for payment, and adjusting

payments and payment requests.  Upon receipt of a claim for services rendered, the carrier pays

the Medicare beneficiary on the basis of an itemized bill, and pays the Medicare supplier on the

basis of an assignment of benefits executed by the beneficiary.  42 U.S.C. § 1395u(b)(3)(B).

These carrier functions are prescribed by regulation.  42 C.F.R. § 421.200; see also United States

v. Blue Cross & Blue Shield, 156 F.3d 1098, 1093 n.10 (11 Cir. 1998) (describing role of

carriers); North Broward Hosp. Dist. v. Bowen, 808 F.2d 1405, 1407-08 (11th Cir. 1987) (same).

For reasons of administrative efficiency, initial payment for services under Medicare is

ordinarily made as long as the claim does not contain glaring irregularities on its face.  See

Heckler v. Ringer, 466 U.S. 602, 627 (1984) (noting Medicare processes literally hundreds of

millions of claims every year).  Carriers then conduct post-payment audits to ensure that

payments are made in accordance with applicable Medicare payment criteria. When payment is

-4-

made erroneously, an "overpayment" is assessed and "recouped" from subsequent payments otherwise due the supplier. 42 C.F.R. § 421.200(a)(2); see also 42 U.S.C. §§ 1395g(a), 1395l(j), 1395gg(b)(1); 42 C.F.R. §§ 405.370, 405.371(a)(1) and (a)(2), 405.350.

A Medicare supplier dissatisfied with the resolution of a claim must present its grievance through the designated administrative appeals process and exhaust the administrative remedies available to it. 42 U.S.C. § 1395u(b)(3)(C); 42 U.S.C. § 1395ff(b) (incorporating by reference 42 U.S.C. § 405(b)); see also 42 C.F.R. § 405.801 et seq. (describing the administrative appeals process for Part B). Once this administrative process is exhausted, judicial review of the Secretary's "final decision" is available as provided in 42 U.S.C. § 405(g) (incorporated by reference in 42 U.S.C. § 1395ff(b)(1)(a)); see also Lifestar Ambulance Serv. v. United States, 365 F.3d 1293, 1295 (11th Cir. 2004) ("The Medicare Act establishes a comprehensive remedial scheme, providing both administrative hearing rights for aggrieved providers . . . and judicial review of the Secretary's final decisions" under 42 U.S.C. § 405(g)) (internal citations omitted).

Medicare Part B resembles "a private medical insurance program that is subsidized in major part by the federal government." Schweiker v. McClure, 456 U.S. 188, 190 (1982). As with private medical insurance programs, the statute and its implementing regulations set forth conditions and limitations on the coverage of services and items (42 U.S.C. §§ 1395k, 1395l, 1395x(s),) exclude certain services and items from coverage, and otherwise specify various limitations. See also 42 U.S.C. § 1395y(a)(2)-(16); 42 C.F.R. § 411.15(a)-(j). As previously mentioned, Part B coverage extends to DME. 42 U.S.C. §§ 1395k, 1395x(s). DME coverage includes wheelchairs used in the patient's "home," including institutions other than hospitals or skilled nursing facilities. 42 U.S.C. § 1395x(n), 42 C.F.R. § 410.38(a)-(c). Customized

wheelchairs are covered as long as they are "uniquely constructed or substantially modified for a specific beneficiary according to the description and orders of a physician." 42 C.F.R. § 414.224(a). In all cases, however, Medicare coverage is limited to services that are medically "reasonable and necessary" for the diagnosis or treatment of illness. 42 U.S.C. § 1395y(a)(1)(A), 42 C.F.R. § 411.15(k)(1).

To obtain payment for certain items of DME, the Secretary has, through the regional Medicare DMER carriers, required the supplier to submit a form known as a Certificate of Medical Necessity ("CMN"). 42 U.S.C. § 1395m(j)(2)(A). The Secretary has also required suppliers to furnish information sufficient to support payments under Medicare Part B, 42 U.S.C. § 1395l(e). Consistent with these mandates, the Secretary has – through the regional carrier – issued several directives advising Region C suppliers that they must maintain medical documentation in addition to the CMNs in order to substantiate compliance with the "reasonable and necessary" requirement of the Act. (Dkt. 12, A.R., pp. 318-19.)

The CMN is limited in scope and requests only: (1) identifying information about the supplier and the beneficiary, (2) a description of the DME supplied, and (3) other administrative information "other than information relating to the beneficiary's medical condition." 42 U.S.C. § 1395m(j)(2)(A). A valid certification by a physician may be made either via the same form, the CMN, or via a prescription or a physician order for an item of DME. Absent a physician certification, however, Medicare lacks statutory authority to pay the claim. See 42 U.S.C. § 1395n(a)(2)(B) ("payment for services . . . may be made . . . only if . . . a physician certifies . . . that . . . such services are or were medically required."); see also 42 U.S.C. § 1395y(a)(1)("no

.

payment may be made . . . for any expenses incurred for items or services . . . which are not reasonable and necessary for the diagnosis or treatment of illness or injury").

However, as Defendant correctly asserts, physician certification, while necessary, is not alone sufficient to establish that an item or service is covered by Medicare. In 42 U.S.C. § 1395l(e), Congress prohibited the Secretary from making Medicare payments unless the Secretary has been furnished the information he may require to substantiate medical necessity. The statute provides that:

> no payment shall be made to any provider of services or other persons under this part unless there has been furnished such information as may be necessary in order to determine the amounts due. . . under this part.

42 U.S.C. Sect. 1395l. In addition, 42 U.S.C.§ 1395u(p)(4) specifies that a carrier may request a supplier to obtain additional information about a claim from a physician, and requires that the physician provide that information.

## Facts

After receiving consumer complaints and irregular results from statistical analyses, the DMER carrier for the Florida region, Palmetto GBA Benefit Integrity Unit ("Palmetto GBA") decided to audit Plaintiff, a DME supplier doing business in Safety Harbor, Florida . (Dkt. 12, A.R, p. 379.) In June 2002, Palmetto GBA surveyed 30 randomly selected beneficiaries out of the 102 beneficiaries who received a certain type of power wheelchair from Plaintiff between September 8, 2001, and February 14, 2002. (Id.) Plaintiff had furnished the wheelchairs based on prescriptions signed by the beneficiaries' treating physicians. Twenty of the 30 beneficiaries, or their caregivers, were interviewed in person. Additionally, medical records were requested for all 30, and 29 were received. (Id.)

At all times relevant to this case, for a power wheelchair to be considered medically reasonable and necessary and, thus, subject to reimbursement by Medicare, the recipients had to be bed-or chair-confined without the wheelchair; they had to be unable to manually operate a wheelchair; and they had to be capable of safely operating the power wheelchair controls. (Id.) 380. In addition, the DME had to be for use in, and used in, the patient's home. (Id.) 42 U.S.C. § 1395x(n). As Palmetto GBA informed DME suppliers in 1996 and 1998, at all relevant times suppliers were responsible for assuring DME claims billed to Medicare are supported by documentation in the patient's medical record, even if the supplier has a physician order (such as a CMN) on file. (Dkt. 12, A.R., pp. 380-81.)

Based on the audit, Palmetto GBA determined that a number of the patients for whom Plaintiff had submitted claims for Medicare reimbursement of DME did not meet the necessary criteria. More specifically, it found that services for 22 of the beneficiaries were not supported by documents in their medical records, and fully half of the 30 beneficiaries whose records were examined did not need a power-operated wheelchair because they were capable of operating a manual wheelchair. ( Id. at 381.) In addition, four of the beneficiaries were inappropriately solicited by plaintiff via telephone. (Id. at 381 & 386.) On June 12, 2002, Palmetto GBA assessed an overpayment of $295,821.84 against Plaintiff and after making some corrections in calculations, it reduced that amount to $280,573.68. A Medicare fair hearing officer affirmed the overpayment assessment. (Id. at 386.) Plaintiff then sought an appeal before an Administrative Law Judge ("ALJ"). (Id.) After a hearing, the ALJ, found that the 30 claims submitted by plaintiff to Medicare for power wheelchair reimbursement between September 8, 2001, and February 14, 2002, that were subject of the Benefit Integrity Unit audit "reflect a

-8-

pattern of erroneous billing[.]" (Id. at 371.) The ALJ also found that the statistical methods used to determine the total overpayment amount were valid. (Id.) The ALJ ultimately determined that overpayments were correctly assessed in 17 cases, but incorrectly in six others and, therefore, he ordered the total be recalculated by the carrier. (Id. at 371-72.) He ruled that Plaintiff "is liable for the overpayment in such amount as may be recalculated by the carrier." (Id. 372.)   In this action, Plaintiff now appeals the ALJ's decision that 17 overpayments were correctly assessed.

## DISCUSSION

As Defendant accurately asserts, this case involves an issue of statutory construction: whether the Medicare Act unambiguously requires the Secretary to base his decision that an item of DME is medically reasonable and necessary solely on the contents of a single form, the CMN. Therefore, the two-prong test of Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984), governs the Court's inquiry into Plaintiff's claims here. In Chevron, the Supreme Court "recognized that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer." For an agency's interpretation to qualify for Chevron deference, Congress must have delegated it authority to make interpretations carrying the force of law. United States v. Mead Corp., 533 U.S. 218, 221, 226-27 (2001). That prerequisite has been satisfied here:  Congress granted the Secretary such authority under the Medicare program with 42 U.S.C. § 1395hh. The first question under Chevron is "whether Congress has directly spoken to the precise question at issue." 467 U.S. at 842. If after this Court "exhaust[s] the traditional tools of statutory construction," Chevron, 467 U.S. 837, 843 n. 9, the intent of Congress is clear, "that is the end of the matter." Id. at 837, 342, & 843 n. 9. If, however, the statute "is silent or ambiguous with respect to the specific issue,"

the court must proceed to the second prong of <u>Chevron</u>, under which "the question for the court

is whether the agency's answer is based on a permissible construction of the statute." <u>Id.</u> at 843.

Under the second prong, the "view of the agency charged with administering the statute is

entitled to considerable deference; and to sustain it, [the Court] need not find that it is the only

permissible construction that [the agency] might have adopted." <u>Chemical Mfrs. Ass'n v. Natural</u>

<u>Resources Defense Council, Inc.</u>, 470 U.S. 116, 125 (1985). Defendant correctly asserts that

such deference is especially appropriate in cases, such as this one, brought under the Medicare

statute, because that statute "is among the most intricate ever drafted by Congress," and Congress

accordingly has "conferred on the Secretary exceptionally broad authority to prescribe standards"

for applying sections of the Act. <u>Schweiker v. Gray Panthers</u>, 453 U.S. 34, 43 (1981). "This

broad deference is all the more warranted when, as here, the regulation concerns 'a complex and

highly technical regulatory program,' in which the identification and classification of relevant

'criteria necessarily require significant expertise and entail the exercise of judgment grounded in

policy concerns.'" <u>Thomas Jefferson Univ. v. Shalala</u>, 512 U.S. 504, 512 (1994) (quoting <u>Pauley</u>

<u>v. BethEnergy Mines, Inc.</u>, 501 U.S. 680, 697 (1991)).

The Medicare Act has provided since its enactment in 1965 that:

> Notwithstanding any other provision of this title, no payment may be made under
> Part A or Part B for any expenses incurred for items or services . . . which . . . are
> not <u>reasonable and necessary</u> for the diagnosis or treatment of illness. . . .

42 U.S.C. § 1395y(a)(1)(A) (emphasis added); <u>see also</u> 42 C.F.R. § 411.15(k)(1). Congress

further provided that, [t]he determination of whether an individual is entitled to benefits under

part A or part B of this subchapter, and the determination of the amount of benefits under

[Medicare] . . . shall be made by the Secretary in accordance with regulations prescribed by him. 42 U.S.C. § 1395ff(a).

Plaintiff urges that the CMN is dispositive, giving physicians, rather than the Secretary, the final word on what is "reasonable and necessary." However, courts have routinely approved the Secretary's judgments that entire categories of care are not reasonable and necessary, regardless of what a particular physician may have found in a particular case. See, e.g., Goodman v. Sullivan, 891 F.2d 449, 451 (2d Cir. 1989) (upholding denial of coverage of MRI); Friedrich v. Secretary of Health and Human Servs., 894 F. 2d 829, 831, 837 (6th Cir. 1990) (per se exclusion of atherosclerosis therapy); Wilkins v. Sullivan, 889 F. 2d 135, 139 & n.6 (7th Cir. 1989) (exclusion of bilateral carotid body resection surgery); Bosko v. Shalala. 995 F. Supp. 580, 583 (W.D. Pa. 1996) (exclusion of autologous bone marrow transplant as treatment for chronic myelogenous leukemia).

Plaintiff argues, relying on 42 U.S.C. § 1395m(j)(2)(B), that Congress intended that whatever information may be required by carriers from suppliers to show medical necessity and reasonableness of DME must be contained in a CMN,. (Dkt. 18, Pl. Br., p. 7.) However, in full, the cited provision states:

> For purposes of this paragraph, the term "certificate of medical necessity" means a form or other document containing information required by the carrier to be submitted to show that an item is reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member.

42 U.S.C. § 1395m(j)(2)(B). Thus, the Court agrees with Defendant that the cited provision appears to be no more than a definition of the term CMN "for purposes of this paragraph," and by that paragraph, in turn, Congress did not even require that a carrier distribute a CMN – it

-11-

merely authorized a carrier to do so, with certain limitations. See 42 U.S.C. § 1395m(j)(2)(A)

("A CMN, as distributed by a supplier of DME for completion, may contain only (1) identifying

information about the supplier and the beneficiary, (2) a description of the DME supplied, and

(3) other administrative information "other than information relating to the beneficiary's medical

condition." Therefore, this provision cannot support Plaintiff's legal conclusion: far from

mandating that a DMERC can require only a CMN and nothing more, it does not even mandate

that a DMERC require the CMN at all.

To facilitate the efficient processing of DME claims, 42 U.S.C. § 1395m(j)(2)(A)(I)

authorizes Medicare to distribute CMNs to physicians or Medicare beneficiaries. In the majority

of cases, the Secretary relies on the CMN "to show that an item is reasonable and necessary." Id.

at § 1395m (j)(2)(B). The standard form CMN thus saves contractors from the administrative

burden of reviewing the beneficiary's medical record for each and every claim, but nothing in the

Medicare Act makes the CMN a supplier's exclusive source for information regarding the

reasonableness and necessity of an item of DME. To the contrary, the Act mandates otherwise:

Congress explicitly directed that carriers shall have the authority to "make such audits of the

records of providers of services as may be necessary to assure that proper payments are made

under this part," 42 U.S.C. § 1395u(a)(1)(C), and to "assist in the application of safeguards

against unnecessary utilization of services furnished by providers or services and other persons to

individuals entitled to benefits," 42 U.S.C. § 1395u(a)(1)(B).

Under 42 U.S.C. § 1395u(a)(1)(C), DME regional carriers are directed to perform audits

in appropriate cases, such as the instant one. to "assure proper payments are made." These

carrier audits are critical to protecting the program from fraud and abuse, and are of particular

-12-

importance in this case since it was such an audit that led to discovery of plaintiff's unjustified claims for reimbursement. (Dkt. 12, A.R., pp. 379-81 (audit investigator's case summary) & 385-86 (medical investigator's report summary).) Without the ability to review documentation beyond the CMN, however, carriers would be unable to determine whether the information provided on the CMN itself is, as was the case here, incorrect, and, accordingly, they would be unable to carry out their responsibilities under § 1395u(a)(1)(C). See also 42 C.F.R. § 424.57(c)(21) (requiring suppliers, as a condition of payment, to "provide[] to CMS, upon request, any information required by the Medicare statute and implementing regulations."

Title 42 U.S.C. § 1395l(e) also directs providers and suppliers to furnish "such information as may be necessary in order to determine the amounts due such providers." The information required by § 1395l(e) necessarily includes documentation requested by the Secretary to ascertain whether the item or service was reasonable and necessary and thus, covered by Medicare and eligible for reimbursement. Congress also expressly required that physicians shall provide diagnostic information to a supplier if the supplier is asked to provide such information by "the Secretary (or fiscal agent of the Secretary). . . ." 42 U.S.C. § 1395u(p)(4). Section 1395u(p)(4), therefore, provides for review of DME claims beyond examination of the CMN itself, and with that provision Congress contemplated that Medicare carriers evaluating DME claims could request information from suppliers beyond the CMN, which the suppliers, in turn, would obtain from physicians. Id.

Plaintiff argues that the "treating physician rule" codified in Social Security Disability ("SSDI") cases should somehow apply in Medicare cases as well. (Dkt 18, Pl. Br., pp. 10-11.) However, even if the Secretary was to defer to a physician's opinion unless it was "inconsistent

-13-

with other substantial evidence," as Plaintiff suggests quoting 20 C.F.R. § 416.927(d)(2)), the Secretary would still be entitled to look behind the CMN at other documentation to determine if the purported conclusion of the CMN was supported by the medical record. See, e.g., 42 U.S.C. § 1395u(p)(4) (requiring suppliers to obtain medical diagnostic information from physicians. and requiring the physician to provide such information).  To conclude, the Court finds that the Medicare Act unambiguously vests final authority in Defendant to determine whether a service is reasonable and necessary, and, thus, whether reimbursement should be made.  Here, the Secretary's overpayment determination is based on substantial evidence in the administrative record.

   **ACCORDINGLY**, it is **ORDERED AND ADJUDGED:**

   Defendant's affirming the finding of an overpayment determination regarding Plaintiff's claims for Medicare reimbursement is **AFFIRMED**.  The Clerk is directed to enter judgment in favor of Defendant and against Plaintiff, close this case, and terminate any pending motions.

   **DONE AND ORDERED** at Tampa, Florida, on November 16, 2005.

                                 RICHARD A. LAZZARA
                                 **UNITED STATES DISTRICT JUDGE**

<u>COPIES FURNISHED TO</u>:
Counsel of Record

-14-